THE UNITED STATES, PLAINTIFFS IN ERROR *vs.* THOMAS BUFORD, DEFENDANT IN ERROR.

When money of the United States has been received by one public agent from another public agent, whether it was received in an official or private capacity, there can be no doubt but that it was received to the use of the United States; and they may maintain an action against the receiver for the same. [28]

B. a deputy commissary general of the United States received from M. a deputy quarter master general of the United States the sum of $10,000, and acknowledged the same by a receipt signed by him with his official description. The United States had a right to treat M. as their agent in the transaction, by making B. their debtor, and to an action brought against him for money had and received, the statute of limitations is no bar. [29]

An account stated at the treasury department which does not arise in the ordinary mode of doing business in that department, can derive no additional validity from being certified under the act of congress. A treasury statement can only be regarded as establishing items for moneys disbursed through the ordinary channels of the department, where the transactions are shown by its books. In these cases the officers may well certify, for they must have official knowledge of the facts stated. [29]

But when moneys come into the hands of an individual, not through the officers of the treasury, or in the regular course of official duty, the books of the treasury do not exhibit the facts, nor can they be known to the officers of the department. In such a case the claim of the United States for money thus in the hands of a third person must be established, not by a treasury statement, but by the evidence on which that statement was made. [29]

In England any instrument or claim, though not negotiable, may be assigned to the king, who can sue upon it in his own name. No valid objection is perceived against giving the same effect to an assignment to the government of this country. [30]

Where, before the transfer to the United States of an instrument which was the evidence of debt, the term of five years had elapsed, the period after which the statute of limitations was a bar, it can require no argument to show that the transfer of such claim to the United States cannot give it any greater validity than it possessed before the transfer. [30]

In the correct order of pleading it is necessary, that the facts of the plea should be traversed by the replication, unless matter in avoidance be set up. It is not sufficient that the facts alleged in the replication be inconsistent with those stated in the plea; an issue must be taken on the material allegations of the plea. [31]

This court has repeatedly decided, that the exercise of the discretion of the court below, in refusing or granting amendments of pleadings or motions for new trials, affords no grounds for a writ of error. In overruling a motion for leave to withdraw a replication and file a new one, the court exercised its discretion; and the reason assigned, as influencing that discretion, cannot affect the decision. [31]

ERROR to the circuit court of Kentucky.

The United States instituted an action of assumpsit in the circuit court of Kentucky, to recover the sum of ten thousand dollars from the defendant, which they alleged to have been received by him to their use. The claim of the United States arose under the following circumstances.

On the 21st December 1812, at Lexington, Kentucky, James Morrison, a deputy quarter master general of the army of the United States paid to the defendant in error, Thomas Buford, then a deputy commissary of the United States, the sum of ten thousand dollars, and took from Mr Buford a receipt for the same, in the following words:

*Lexington, 21st December* 1822.

Received of James Morrison, deputy quarter master general, ten thousand dollars, for which sum I promise to account when called upon.

THOS. BUFORD,
*Deputy Commissary, U. S. A.*

Upon the settlement of his account with the United States, Mr Morrison claimed a credit for the sum thus paid to Mr Buford, which credit was refused to him; and afterwards, on the 3d March 1823, congress passed an act " for the relief of James Morrison," by which the accounting officers of the treasury were authorised to allow to him in the settlement of his accounts, the sum so advanced to Mr Buford, " provided that the said James Morrison shall first assign and transfer to the United States, all his right and claim to the moneys mentioned in a certain receipt given by the said Thomas Buford to the said James Morrison, bearing date the 21st day of December 1812," with a proviso, that if James Morrison should not be found indebted to the United States the whole of the amount so to be assigned, the balance should be repaid to him.

On the 7th of March 1823, James Morrison made the following assignment to the United States, in compliance with the act of congress:

" Now I, James Morrison, in pursuance of the provisions of the said law, do hereby assign and transfer to the said United States, all my right and claim to the moneys mentioned in the said receipt. Witness my hand and seal, this 7th day of March 1823.

"JAMES MORRISON."

*Test.* H. CLAY,
    A. D. HARDIN.

Upon the execution of this assignment, and the surrender of the receipt, the following account was made out, and certified at the treasury of the United States.

*Dr  Thomas Buford, late Deputy Commissary, in account with the U. S. Cr.*

GENERAL ACCOUNT OF ARREARAGES.

| | | |
|---|---|---|
| To James Morrison, for amount received from him per receipt 21st December 1812, for which he is accountable,   $10,000 | By balance due U. States, | $10,000 |
| To balance per contra,   $10,000 | | |

TREASURY DEPARTMENT, 3d Auditor's Office, March 7th, 1823.

Stated by                   RD. BURGESS.

Pursuant to the provisions of the act of congress, passed 3d March 1817, entitled an act to provide for the prompt settlement of public accounts, a transcript of the account so stated and settled was certified, for the purpose of maintaining a claim on Thomas Buford for the balance which thus appeared to be due to the United States.

In August 1823, the attorney of the United States filed a declaration in the suit, in the district court of Kentucky, for money had and received, which declaration set forth, " that the defendant, on the 10th day of March 1823, was indebted to the United States in the sum of ten thousand dollars, for so much money before that time had and received as an officer of the United States to their use, as by the account of the said defendant with the said United States, duly settled, examined and adjusted at the treasury

department, on the said 10th day of March 1823, and to the court shown, duly certified according to the act of congress of the United States, in such case made and provided, fully appears."

To this declaration the defendant pleaded,

1. After oyer of the account ; that the plaintiffs actio non, because " the declaration and the matters and things therein contained are not good and sufficient in law to have and maintain the said action," &c.

2. Because he does not owe the debt in the declaration mentioned and demanded, &c.

3. Because James Morrison, the assignor of the receipt and demand to the said plaintiffs, was, at the time of and before said assignment, and remained until the time of his death, indebted to him in a much larger sum of money than the said sum demanded, for money had and received by said Morrison, to the use and benefit of said defendant ; for money before that time lent and advanced at his special instance and request ; for money paid, laid out and expended, at his like special instance and request : and being so indebted, said Morrison assumed upon himself and promised to pay said defendant the aforesaid sum of money, whenever he should be thereunto afterwards requested ; yet the said Morrison has not paid said defendant the aforesaid sum of money, or any part thereof ; nor have the executors or administrators of said Morrison, since his death, or any one for him or them, paid said defendant said sum of money, or any part thereof, but the same remains wholly unpaid ; which said sum of money, or so much thereof as is equal to the demand of said plaintiffs, the said defendant offers to set off and pleads as a set off against said plaintiffs' demand, &c.

4. Because the cause of action and demand set forth by the plaintiffs did not accrue within five years next before the impetration of the original writ in the cause.

To these several pleas the plaintiffs demurred, for insufficiency ; and the demurrer being overruled, the United States replied, " the matters and things contained in the third plea of the defendant are not good and sufficient in law to bar and

preclude the United States from having and maintaining their action; and they further say that the matters and things contained in the fifth plea of the defendant of the statute of limitations are not good and sufficient in law to bar and preclude the plaintiffs from having their action, &c.

The court sustained the demurrer, and ordered that the third and fifth plea be overruled, and gave time to the defendant to put in other pleas.

And afterwards, at October term 1824 of the Court, the defendant pleaded actio non, because the account upon which the plaintiffs' suit is founded, was for money alleged to have been advanced by James Morrison to the defendant on the 21st day of December, 1812, in the district aforesaid, amounting to the sum of $10,000, for which, by the terms of the transaction and the express agreement of said parties thereto, said Buford was to account to said Morrison for the same, and that said account and claim of said Morrison was, on the 7th day of March 1823, under and by virtue of an act of congress, assigned and transferred by said Morrison to said plaintiffs; and the said defendant in fact says, that said demand and cause of action aforesaid, did not accrue to said Morrison within five years next before said assignment aforesaid, &c.

7. That on the 21st day of December 1812, this defendant received from a certain James Morrison, the sum of ten thousand dollars, and executed to him a receipt therefor, that is to say, in the commonwealth and district of Kentucky, and on the 7th day of March 1823, the said Morrison assigned by his certain writing, to which is subscribed his proper hand, all his right and claim to the money in the said receipt specified as aforesaid, and upon that receipt and assignment aforesaid, and without any other consideration, and without the consent and privity of the defendant, the account in the declaration mentioned was settled, examined and adjusted at the treasury department of the United States, to which settlement and adjustment this defendant has at no time assented. And the defendant says that he did not undertake and assume to pay the said debt in the declaration

mentioned within five years next before the assignment by the said Morrison; nor then, nor at any time subsequent.

8. Because he says that the assumpsit and demand of said plaintiff arose upon and by virtue of a claim which was held by virtue of one James Morrison for money by him advanced and loaned to said defendant on the 21st day of December 1812; and which claim and demand of said Morrison was, by virtue of an act of congress on the 7th day of March 1828, assigned and transferred to said plaintiffs. And the defendant in fact says, that the said cause of action did not accrue or arise within five years next before the suing out of the original writ in this cause, &c.

9. And because the claim and demand of said plaintiffs was derived by assignment and transfer from James Morrison, of a certain writing executed by the defendant to said Morrison, acknowledging the receipt of ten thousand dollars, by the defendant from Morrison, stipulating to account therefor to said Morrison under and by virtue of an act of congress, which assignment as aforesaid was made on the 7th day of March 1823, and for no other consideration whatever. And the defendant in fact says, that said Morrison, before and at the date of said assignment in the district aforesaid, was indebted to said defendant in a sum equal to the sum demanded by said plaintiff, to wit, the sum of eleven thousand dollars, for money by said defendant before that time loaned and advanced to the said Morrison, for money had and received by said Morrison to the use of said defendant, and for money by said defendant paid, laid out and expended for said Morrison, and all at the special instance and request of said Morrison, and being so indebted, he, said Morrison, in consideration thereof, then and there assumed upon himself, and promised said defendant to pay said sums of money, whenever he should be thereto afterwards requested, and although often requested has not paid the same, which said sum of money, said defendant is here willing, and offers to set off against the plaintiffs' demand.

To the ninth plea the attorney of the United States filed a replication stating, that the United States ought not to be barred by any thing therein contained, because he says that

the said James Morrison was not, at the date of said assignment in said plea mentioned, indebted to the said defendant, as in pleading the defendant hath alleged. Upon this replication issue was joined.

To the sixth, seventh, and eighth pleas, the plaintiffs replied that the United States ought not to be barred by any thing contained in the said pleas, because the demand in the declaration accrued for and in consideration of ten thousand dollars of and belonging to the United States, and by the said James Morrison, as an officer of the United States, advanced to the said Thomas Buford as an officer of the United States, to wit, as deputy commissary of the United States, then and there, and to the use of the said United States, and by the said Thomas Buford, in his official character as deputy commissary as aforesaid, receipted for to James Morrison, in his official character as deputy quarter master general. And the said attorney for the United States brings here into court, the said receipt signed with the proper name of said Thomas, and in his official character as aforesaid, and assignment, and the act of the congress of the United States in the sixth, seventh, and eighth pleas of the defendants mentioned, duly certified according to the acts of the congress of the United States in such case made and provided, which said sum of money of and belonging to the United States so as aforesaid advanced by the said deputy quarter master general, to the said deputy commissary of the United States, and so as aforesaid receipted for, by said Thomas Buford as deputy commissary as aforesaid, is the same money, and receipt, and assignment, in the said sixth, seventh, and eighth pleas of the defendant mentioned, and this the said attorney of the United States is ready to verify: wherefore, &c.

The defendant after craving oyer of the writing in the replication to the sixth, seventh, and eighth pleas, rejoined, that by reason of any thing by the plaintiffs alleged in replying to the sixth, seventh, and eighth pleas of the defendant, the plaintiffs ought not to have and maintain their action against the defendant, because he says that the money received by him from the said Morrison was received upon an

individual transaction between the said Morrison and the defendant, and the express understanding and agreement that the defendant was to account therefor with the said Morrison, and not upon any contract for this defendant to account with the plaintiffs, and of this he puts himself upon the country.

. The plaintiffs surrejoined and stated, that the money demanded by the declaration, and expressed in the receipt and assignment in the sixth, seventh, and eighth pleas of the defendants, was the proper money of the United States, lent and advanced by said quarter master general to the said Thomas Buford, as deputy commissary, and to the use of the said United States, as in the replication to the said pleas, six, seven, and eight, is alleged.

The defendant demurred, and the United States having joined in the demurrer, the court gave judgment " that the law was with the defendant."

Afterwards, at a subsequent day of this same term " the attorney for the United States moved to withdraw the replication to the pleas of the statute of limitation, for the purpose of replying thereto a written agreement produced in court by the attorney, under the hand and seal of James Morrison and the said Buford, respecting the statute of limitations."

The writing referred to was as follows:

" Whereas there is an item of ten thousand dollars in the account of James Morrison, late deputy quarter master general, charged by him as paid to Thomas Buford, deputy commissary general United States army, or of purchases, in December 1812, suspended on the allegation, by the proper officer of the war department for the United States, that Morrison should look to Buford for this money, and Morrison having been advised that it would be proper that he should institute a suit against Buford, so as to preclude any question about the statute of limitations; but being willing to await a reasonable time to let Buford show, if he can, that said sum was paid, or properly accounted for by him; now Morrison agrees that he will not bring suit before 1st day of June 1819; and Buford agrees that if suit is brought thereafter, the statute of limitation should be no bar to Mor-

rison's recovery, if he is otherwise entitled to recover. In testimony whereof, we have hereunto set our hands and seals, this 20th day of December 1819."

This motion was overruled by the court.

The record contained the following memorandum. "After the demurrer decided in this cause, the attorney for the United States produced the writing between James Morrison and said Buford respecting the statute of limitations, in the words and figures following, (inserted), and moved for leave to withdraw the demurrer to the pleas of the statute of limitations, for the purpose of replying to the said writing, and for cause shown, that he had come to the possession and knowledge of said writing since the decision of the court upon the demurrer. The court overruled the motion upon the ground that the writing would not be an avoidance of the statute, but only a substantive cause of action for breach of said covenant, expressing, however, that leave should be given if the writing would be a sufficient reply and evidence of the statute of limitations, to which opinion of the court in refusing to withdraw the demurrer, and to reply, the attorney for the United States excepted, and brought this writ of error."

The case was argued by Mr Berrien, attorney general of the United States, for the plaintiffs in error; and by Mr Wickliffe and Mr Ogden for the defendant.

The attorney general contended, that the court in pronouncing its judgment was bound to look at the whole record, and give judgment accordingly. 1 Stephens on Pleading, 162. The original error was in allowing the plea of the statute of limitations, which could only be sustained on the ground that the United States had no original cause of action against Thomas Buford, and that the limitation had attached before this action was brought.

1. The United States had an original and good cause of action.

2. That if the assignment is to be referred to, still the right of action is in the United States.

3. The treasury settlement was conclusive against the defendant, and whether the right of action existed originally or derivatively, the statute was no bar to the suit by the United States.

As to the first point: the declaration alleges, and the replication and surrejoinder reiterate the allegation, that "this was the proper money of the United States, received by the defendant to the use of the United States," and the demurrer on the part of the defendant admitted the same. If the money of the United States is advanced by one agent of the government to another, this is *prima facie*, by necessary implication, an advance to the use of the government. In the case before the court, by the terms of the receipt given by the defendant, this is shown; as the receipt acknowledges the money to have been paid by James Morrison, "deputy quarter master general of the United States," to Thomas Buford, "deputy commissary general;" and promises to account for the same. To whom was he to account, but to "the deputy quarter master general," the agent of the United States. The money was received by the defendant as an officer of the United States, from Morrison as an officer; and was therefore received to the use of the United States.

Under the provisions of the act of congress of 20th March 1812, it was the duty of the commissary general to account to the quarter master general, and thus the obligations of duty, and those assumed by the receipt, were the same. The transaction was official in its character, and was therefore one in which the rights of the United States were in full operation. Had Buford, in his accounts as an officer, in the settlement of those accounts with the United States, given credit for this sum, he would have been discharged from all liability to Morrison for the amount.

If the claim of the United States is to rest on the receipt given to Morrison, and the assignment made of it under the act of congress, it was contended that the law which authorised the transfer gave to the receipt an assignable character, and authorised the United States to sue upon it in this form.

The treasury settlement was evidence against the defendant, as he was within the objects of the provisions of the act. Walton vs. The United States, 9 Wheaton, 651. In every case of " delinquency" in an officer, or any one accountable to the United States, the settlement is evidence; and the privity or consent of the debtor is not required to give it validity.

The statute of limitations of Kentucky is not a bar to the suit of the United States. The United States vs. Hoar, 2 Mass. Rep. 311.

If the claim of the United States was under the assignment only, as the receipt is a promise " to account when called upon ;" until called upon there was no cause of action, and the promise was not broken until the defendant was called on.

The court should have admitted the replication to be withdrawn; and the agreement between Buford and Morrison was a good answer to the plea of the statute of limitations.

Although the rule is admitted that error does not lie for matters in the discretion of a court, yet exceptions to this rule exist, and this is a case for an exception. Mandeville vs. Wilson, 5 Cranch, 15. The plaintiffs had no knowledge of the agreement which they desired to give in evidence until after the demurrer to the defendant's pleas; and he desired to make this a distinct matter, in reply to the allegation that the claim was barred by the statute of limitations. Cited, Young vs. The Commonwealth, 6 Binney's Reports, 88. Marine Insurance Company vs. Hodgson, 6 Cranch's Rep. 206.

The court having stated the reasons for the refusal of the motion of the plaintiff, they may therefore be examined; and when examined they will be found to be erroneous, and may be assigned as error. It was error to refuse the motion, because the plaintiffs were thus excluded from the benefit, and legal operation of the evidence; and having the construction of the evidence presented for the decision of this court, if it should have been necessary. Upon a

fair examination of the state of the pleadings, the plaintiffs' claim should have been allowed.

The agreement was a good bar to the statute. Its object was to prevent the operation of the statute. By it Morrison agreed not to bring suit before a day named, and Buford agreed that if suit should be brought thereafter, the statute should not be a bar.

In England the courts proceed on the principle that the bar created by the statute rests "on the presumption of payment," and whatever repels the presumption takes the case out of its operation. 2 Stark on Ev. 892. The agreement between Morrison and Buford does this effectually. It admits the debt to have existed; it provides that time shall be allowed to show payment, and it implies a promise of payment on the condition of forbearance.

Mr Wickliffe and Mr Ogden, for the defendant, argued, that the liability of the defendant upon the receipt, was a private, and not a public responsibility : although the official description of the parties was used, it did not therefore become an act of an official character. The deputy quarter master general had no right to advance or pay the money of the United States to the deputy commissary. The officers were in different spheres, each accountable to their government, and not to each other. This is declared by the provisions of the fifth section of the act of congress of 1812.

Such were the views of the accounting officers of the treasury upon this subject, and therefore they considered the advance made by Morrison to Buford illegal. A special act of congress was necessary to authorise the credit, and to make the charge against Buford legal in the treasury department. It was legal from the date of that act, and not before. This was therefore a transaction between two officers of the government, unconnected in their official duties, and the United States did not necessarily derive from the same a right of action against the receiver of the money.

The provisions of the acts of congress authorising treasury settlements and making them evidence, did not apply to such a case. These laws comprehended cases of disbursing officers liable to account to the United States; and the certifi-

cate of the treasury department could be controverted by the defendant, and he had a right to do so by the usual practice and forms of pleading.

The sixth, seventh, and eighth pleas are good, if the defendant was not indebted to the United States. It is admitted that the statute of limitations does not run against the United States, but as between Morrison and Buford it did run; and when the assignment of the claim on the receipt were made, the statute had attached, and the United States were in no better situation than was that of Morrison before and at the time of the assignment. The suit should have been instituted by the plaintiffs as assignees, and it would have been in that form subject to the rights of the defendant growing out of the statute of limitations, and to all the offsets to which the defendant was entitled, in his particular and private relations with Morrison.

The United States, if they claimed on the receipt and assignment, and desired to show that the statute did not run, should have stated the same in their replication, by alleging a demand within five years.

The case comes up without any opinion of the court upon the point of law. There is a question of law which arises in the pleadings, they having ended in a demurrer; and the pleadings, it is submitted, present the only question in the cause. The receipt is not in question. It may show a responsibility to the United States by the defendant; but as it is not in the pleadings, it cannot aid the plaintiffs' case.

The question for the decision of this court, is not whether the declaration is good, but whether the pleas are good. If they are, the defendant must go without day.

The declaration, whether it must be considered as general or special, is a statement of a debt due to Morrison, and assigned to the United States, and the pleas allege that if the debt existed, it is barred by the statute of limitations, and there is no claim. This is not met by the United States. They do not traverse this, and thus put it in issue; nor do they traverse the defendant's allegation which is made, that the transaction with Morrison was private. The replication is therefore defective.

[United States *vs.* Buford.]

It is not seen how this court can look any further into the pleadings on a demurrer, and it must be conceded that the error is in the replication. The matters asserted in the pleas stand uncontradicted; and must be taken as true against the plaintiff. This is decisive of the cause. If Buford was, by the terms of the receipt, liable on demand, a demand should have been alleged.

The refusal of the court after judgment in favour of the defendant, to allow the plaintiffs to withdraw the replication, in order to set up the agreement, was in the exercise of their discretion, and not examinable in this court. To admit as ground of error the refusal of motions of this kind, would be productive of frequent injustice. The record never shows why acts of the character of that complained of are done, and thus a superior court would often be found proceeding upon very different circumstances from those which existed in the case.

It is doubtful whether it is within the province of a court to interfere with such a decision as that now objected to. It is not a final judgment; and the final judgment upon the pleadings in the case is yet subsisting and must remain until reversed. The motion was to set aside the judgment, and this is not a ground of error. The rule is invariable, that there should be something in the record upon which the court can exercise their judgment.

The principles recognised in this court in Bell *vs.* Morrison, 1 Peters, 351, in reference to the statute of limitations, establish the rule to be, that an acknowledgement of the debt will not take the case out of the statute. There must be a promise to pay the debt. The courts of Kentucky have held these principles to be correct, and they support the decision of the circuit court upon the agreement between the defendant and Morrison.

Mr Justice M'Lean delivered the opinion of the Court:

This suit was brought by writ of error from the circuit court of Kentucky, to reverse a judgment obtained in that court against a claim prosecuted by the United States. The following errors are assigned by the attorney general:

1. That the judgment of the circuit court on the defendant's demurrer to the surrejoinder of the plaintiffs, growing out of the sixth, seventh and eighth pleas of the defendant, ought to have been for the plaintiffs and not for the defendant.

2. That the court erred in not permitting the plaintiffs to withdraw their replication to the defendant's several pleas of limitation, and to plead the special agreement on that subject between Morrison and Buford.

The declaration contains but one count, in which it is alleged, that the defendant was indebted to the United States in the sum of ten thousand dollars, for so much money by him before that time had and received, as an officer of the United States to their use, as by account of the said defendant with the said United States, settled, examined and adjusted, at the treasury department, duly certified, fully appears, &c.

The treasury statement is as follows:

Dr Thomas Buford, late deputy commissary in account with the United States;

To James Morrison, for amount received from him per receipt, 21st December 1812, for which he is accountable,   -   .  -   -   -   $10,000

The receipt referred to is in the following words:

Received of James Morrison, deputy quarter master general, ten thousand dollars, for which sum I promise to account to him when called on. Signed Thomas Buford, deputy commissary of U. S. A.

Under the following act of congress, this receipt was assigned to the United States.

"Be it enacted by the senate and house of representatives, in congress assembled, that the accounting officers of the treasury department be and they are hereby authorised to allow James Morrison, late deputy quarter master general, in the settlement of his accounts, the sum of ten thousand dollars, which was advanced by James H. Pendell, an assistant deputy quarter master general, providing that the said James Morrison shall first assign and transfer to the United States all his right and claim to the moneys men-

tioned in a certain receipt by said Thomas Buford to said James Morrison, bearing date the 21st day of December, in the year 1812, &c." The words of the assignment are, " Now, I James Morrison, in pursuance of the provisions of said law, do hereby assign and transfer to the United States, all my right and claim to the moneys mentioned in said receipt. Witness my hand and seal this 7th day of March 1823. Signed James Morrison.

In the sixth plea the defendant says, the plaintius *acuo* non, because he says that the account upon which the plaintiffs' suit is founded, was for money alleged to have been advanced by James Morrison, to the defendant, on the 21st day of December 1812, in the district aforesaid, amounting to the sum of ten thousand dollars, for which, by the terms of the transaction and agreement of said parties thereto, said Buford was to account to said Morrison for the same, and that said account and claim of said Morrison was, on the 7th day of March 1823, under and by virtue of an act of congress, assigned and transferred by said Morrison to said plaintiffs, and the said defendant in fact says, that said demand and cause of action aforesaid, did not accrue to said Morrison within five years next before said assignment, and this he is ready to verify," &c.

The seventh plea states the receipt of the money by the defendant from Morrison, the assignment of the receipt; and that without any other consideration, and without the consent and privity of the defendant, the account in the declaration mentioned, was settled at the treasury; to which he has at no time assented; and the defendant says that he did not undertake and assume to pay the said debt, in the declaration mentioned, within five years next before the assignment by the said Morrison, nor then, nor at any time subsequent.

In the eighth plea the defendant says, that the assumpsit and demand of said plaintiffs arose from and by virtue of a claim which was held by one James Morrison, for money by him advanced and loaned to said defendant, which was assigned, &c.

The attorney for the United States, in his replication, says, that by any thing contained in the sixth, seventh and eighth

pleas of the defendant, they ought not to be barred, because they say that the said demand in the declaration accrued for and in consideration of ten thousand dollars of and belonging to the United States, and by the said James Morrison, as an officer of the United States, advanced to the said Thomas Buford, as an officer of the United States, to wit, as deputy commissary, then and there to the use of the United States, and by the said Thomas Buford, in his official character as aforesaid, receipted to said James Morrison in his official character as deputy quarter master general, and the said attorney brings here into court the said receipt, signed with the proper name of the said Thomas, in his official character as aforesaid, the assignment, and the act of congress, in the sixth, seventh and eighth pleas of the defendant mentioned, duly certified, &c. which sum of money is the same as referred to in the above pleas, &c.

To this replication there is a rejoinder by the defendant, asserting that the above sum of money was received upon an individual transaction, &c. The attorney for the United States in his surrejoinder says, that the said money demanded by the declaration and expressed in said receipt and assignment in the sixth, seventh and eighth pleas of the defendant, was the proper money of the United States, lent and advanced by the said quarter master general to the said Thomas Buford, as deputy commissary, and to the use of the said United States, &c.

To this the defendant demurs, which presents for consideration, the sufficiency of the sixth, seventh and eighth pleas of the defendant.

In behalf of the government it is contended,

1. That a good cause of action by the United States against Buford, existed, prior to the assignment.

2. That the treasury settlement gave a right of action, and also the assignment.

8. If the sum received by Buford from Morrison was public money, whether it was received in an official or private capacity, there can be no doubt that Buford received it to the use of the United States, and that they may maintain an action against him.

The United States had a right to treat Morrison as their agent, in this transaction, by making Buford their debtor, and to an action brought against him, for money had and received, the statute of limitations would be no bar. It is therefore important to consider on what ground the plaintiffs seek to recover in this case.

Is the declaration general or special? It contains only one count, and that sets out the cause of action as arising from a settled account at the treasury department. The declaration must therefore be considered as special, and if the plaintiffs recover, they must recover upon the ground stated.

The treasury statement, the receipt and the assignment of it, are made a part of the declaration.

An account stated at the treasury department, which does not arise in the ordinary mode of doing business in that department, can derive no additional validity from being certified under the act of congress. Such a statement can only be regarded as establishing items for moneys disbursed through the ordinary channels of the department, where the transactions are shown by its books. In these cases the officers may well certify, for they must have official knowledge of the facts stated.

But where moneys come into the hands of an individual, as in the case under consideration, the books of the treasury do not exhibit the facts, nor can they be officially known to the officers of the department. In this case, therefore, the claim must be established, not by the treasury statement, but by the evidence on which that statement was made.

The account against Buford is founded on the receipt, and was made out on the day it was assigned by Morrison, under the special act of congress. Until this time, Morrison was charged on the books of the treasury with this sum of ten thousand dollars, and there can be no doubt that he and his sureties were liable for it.

As the advance of this sum to Buford was not made in pursuance of any authority, the treasury officers had no right to release Morrison from liability, by crediting his account with so much money paid to Buford.

The declaration being special upon the treasury account;

and the account being raised upon the assignment of the receipt, the claim of the United States to the sum in controversy, as presented, cannot be considered as existing prior to the assignment.

It is objected that, under this assignment, the United States may claim as assignees in equity, but not at law. This objection seems not to be well founded. In England, any instrument or claim, though not negotiable, may be assigned to the king, who can sue on it, in his own name. No valid objection is perceived against giving the same effect to an assignment to the government in this country. But the special act under which this assignment was made, puts this question at rest. This act authorises the assignment; consequently, when made, the legal right is vested in the government, and authorises a charge against Buford, on the books of the treasury.

As more than five years had elapsed from the date of the receipt to the assignment, the statute of limitations will bar a recovery of this claim, unless the transfer of it to the United States has changed its character, or the terms of the receipt prevent the statute from operating, or, by some promise or agreement between Morrison and Buford, the statute has been waived.

It can require no argument to show, that the transfer of any claim to the United States cannot give to it any greater validity than it possessed in the hands of the assignor. If the character of the claim be so changed, as to exempt it from the operations of the statute of limitations, after the transfer, such transfer cannot have the effect to take the claim out of the statute when it has run.

But it is contended, that as the receipt promises to account for the sum of ten thousand dollars, when called on, it was necessary for the defendant to show, that no demand had been made, or that five years had elapsed subsequent thereto and before the assignment.

In his plea the defendant states, that the demand and cause of action did not accrue within five years next before said assignment, &c. If a demand had been made so as to prevent the effect of the statute, it was incumbent

on the plaintiffs to plead over and allege the fact. They have not done it, and this allegation of the plea stands uncontradicted, and is consequently admitted to be true.

The defendant in his plea sets out, that the loan of the money was obtained from Morrison, to whom the payment was to be made, and represents the transaction as a private one. In the replication, the plaintiffs do not traverse this fact, but allege that the money belonged to the United States, and was advanced by Morrison, as an officer of the United States, to the defendant, as an officer.

On the sufficiency of the plea, and the insufficiency of the replication, one of the counsel in the defence rests the cause.

In the correct order of pleading, it is necessary that the facts of the plea should be traversed by the replication, unless matter in avoidance be set up. It is not sufficient that the facts alleged in the replication be inconsistent with those stated in the plea; an issue must be taken on the material allegations of the plea.

In the case under consideration, it was material in the defence, to show that the loan of this money was a private transaction, and such is the statement of the plea, substantially. This fact should have been traversed in the replication. It was not done, and consequently the replication is bad on demurrer.

The writing set out in the bill of exceptions, it is insisted, shows a waiver of the statute by Buford. This writing was produced after the decision of the court was given on the demurrer, and leave was then asked to withdraw the replication to the plea of the statute of limitations, for the purpose of pleading this covenant, of which, it was alleged that the attorney for the United States had no knowledge, until after the decision on the demurrer. The court overruled the motion, upon the ground that the writing would not be an avoidance of the statute, but afford only a substantive cause of action for a breach of its conditions.

The court, it is contended, in refusing leave to amend, decided the effect of this covenant, and that they erred in their construction of it.

[United States *vs.* Buford.]

This court has repeatedly decided, that the exercise of the discretion of the court below, in refusing or granting amendments of pleadings or motions for new trials, affords no ground for a writ of error. In overruling the motion for leave to withdraw the replication and file a new one, the court exercised its discretion, and the reason assigned, as influencing that discretion, cannot affect the decision.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel; on consideration whereof, it is considered, ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed.